Luis Sanquírico, peticionario y apelante, *v.* La Junta de Directores de la Asociación "Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular de Puerto Rico", querellada y apelada.

Núm. 7434.—*Sometido:* Febrero 15, 1938. *Resuelto:* Marzo 11, 1938.

*E. H. F. Dottin,* abogado del apelante; *C. H. Juliá,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

El 24 de septiembre de 1935 Luis Sanquírico radicó una petición ante la Corte de Distrito de San Juan solicitando la expedición de un auto de *mandamus* contra "La Junta de Directores de la Asociación, Fondo de Ahorro y Préstamos de los Empleados del Gobierno Insular de Puerto Rico." Alegó en ella, y posteriormente probó, que estuvo empleado en el Gobierno Insular por más de veintisiete años, hasta febrero de 1931, en que se jubiló; que al retirarse era miembro al día de la citada asociación, la cual se creó por la Ley núm. 52 de 1921 (Leyes de ese año, pág. 375), y estaba asegurado bajo la misma ley; que notificó a la Asociación al tiempo de renunciar que deseaba continuar disfrutando de los privilegios del seguro y obtuvo oportunamente la devolución de los ahorros que había acumulado durante los años que estuvo empleado; que en agosto 8 de 1935, el peticionario informó por carta su deseo de no continuar el seguro y solicitó se le devolviera el 50 por ciento del total de las cuotas pagadas por él, de conformidad con la sección 22 de la Ley núm. 52, supra; que el 14 de agosto de 1935, la Asociación se negó a hacer tal reembolso o devolución fundada en que para aquella fecha el peticionario no tenía derecho a que se le devolviera ninguna suma, diciendo "que un acogido puede renunciar su beneficio al seguro, pero no tiene derecho a que se le reembolse el cincuenta por ciento de las cuotas pagadas."

La corte inferior declaró sin lugar la petición basada principalmente en el fundamento de que en el único momento en que un asegurado bajo la Ley núm. 52 puede solicitar con éxito y obtener el reembolso del 50 por ciento del total de las cuotas pagadas, es al renunciar o retirarse del

cargo. La corte de distrito interpreta la sección 22 de la ley en cuestión en el sentido de que limita tal derecho al caso antes mencionado, y toda vez que en el caso que está ante nos el peticionario no solicitó la descontinuación del seguro y la devolución del 50 por ciento hasta más de cuatro años después de haber cesado en su cargo, dicho funcionario había perdido su derecho al mismo. Incidentalmente la corte de distrito también indicó que el peticionario había perdido su derecho al seguro debido a que había dejado de pagar tres cuotas consecutivas, en violación de la sección 21 de la ley.

Es claro, a nuestro juicio, que a la fecha en que el peticionario radicó su petición él no adeudaba tres cuotas consecutivas. Las correspondientes a julio y agosto estaban vencidas, mas la de septiembre no había aún vencido, puesto que ella dependía directamente del número de asociados que murieran en dicho mes. La petición fué radicada el 24 de septiembre, y en su consecuencia antes de que venciera la cuota correspondiente a dicho mes. Es cierto que el 25 de noviembre de 1935 se presentó una petición enmendada luego de haber declarado la corte con lugar una excepción previa, mas la fecha de la petición original es la que debe regir los derechos del aquí peticionario.

Por tanto, la principal y única cuestión envuelta es la interpretación que debe dárseles a las secciones 21 y 22 de la Ley núm. 52, supra, según fué enmendada por la Ley núm. 15 de 1927 (Leyes de ese año, pág. 135). Examinémoslas. La sección 21 dispone:

"Todo socio acogido a los beneficios de esta Ley que renunciare o fuere separado de su cargo por hechos que no impliquen perversión moral, podrá continuar disfrutando de los beneficios del seguro por muerte, siempre que al cesar en su cargo notifique a la Junta de Directores su intención de hacerlo así, debiendo en tal caso continuar cotizando cada vez que ocurra una defunción y sea notificada; *Disponiéndose*, que si dejare de cotizar tres meses consecutivos cuando hubiere defunciones, perderá todos sus derechos al se-

guro; *Y disponiéndose, además,* que todo empleado que se encuentre disfrutando de licencia sin sueldo o que esté suspendido de empleo y sueldo temporalmente, conservará sus derechos a los beneficios del seguro por muerte y por inutilidad física mientras dure tal licencia o suspensión temporal siempre que durante los primeros cinco días de cada mes deposite en la oficina de la Asociación una cantidad igual a la que le sería descontada de su sueldo para los efectos del seguro, como si no hubiere estado bajo tal licencia o tal suspensión temporal.'' (Ley núm. 15 de 1927.)

La sección 22 lee así:

''El socio que no desee continuar asegurado al renunciar su puesto lo notificará así a la junta de directores, la que procederá a liquidar su cuenta de ahorros, y le reembolsará el cincuenta (50) por ciento del total de las cuotas que haya pagado por concepto de defunciones, de los fondos de reserva a que se contrae el artículo 21 de esta Ley en su apartado tercero.'' (Ley núm. 52 de 1921.)

Si uno examina el texto inglés y el castellano de la sección 22, supra, nota que existe una discrepancia entre las palabras ''*after his resignation from office*'' y la frase correspondiente en castellano, la que traducida más literalmente debió leer en inglés ''*on resigning from office.*'' La corte inferior aplicó estrictamente la versión castellana y la interpretó en el sentido de que significaba que si el asegurado deseaba descontinuar su seguro y obtener el reembolso del 50 por ciento del total de las cuotas pagadas, tenía que hacer tal elección al momento de cesar en su cargo o empleo. El apelante da énfasis a la anterior discrepancia en el texto e insiste en que cualquier duda debe resolverse a su favor.

■ Hemos estudiado las secciones citadas desde todo ángulo posible y llegado finalmente a la conclusión de que la sentencia debe ser confirmada.

En ninguna parte de la ley, excepto en las secciones 21 y 22, existe precepto alguno en torno al privilegio, pues es un privilegio, de obtener el reembolso del 50 por ciento del total de las cuotas pagadas. El tipo de seguro creado por el estatuto es similar al que se conoce con el nombre de seguro

colectivo (*group insurance*). Bajo esa clase de seguro, generalmente no existe derecho a nada, a no ser al pago de la póliza si a la muerte del asegurado éste está al día en el pago de las primas. Si el asegurado abandona la póliza pierde todo derecho que en cualquier momento haya tenido a su valor o a las primas. En su consecuencia, bajo este sistema equivale a una concesión el permitir, aún en un momento específico, que se descontinúe la póliza y se obtenga el reembolso del 50 por ciento de las primas pagadas. Las primas son de ordinario tan bajas que la protección ofrecida al asegurado mientras las paga es causa (*consideration*) más que suficiente para que su cobro sea permanente.

Teniendo lo anterior en mente examinemos la letra de la sección 22. A nuestro juicio la versión castellana debe prevalecer, puesto que ése fué el idioma en que la ley fué presentada en la Asamblea Legislativa. Las palabras que siguen a la frase "el socio que no desee continuar asegurado" cubren tan sólo la opción que tiene el asegurado al momento de renunciar su puesto. Si esa sección se interpreta en unión a la 21, puede llegarse a la conclusión de que ambas permiten a cualquier asegurado, al renunciar, dos caminos, a saber: (*a*) continuar disfrutando de los beneficios del seguro, siempre que al cesar en su cargo notifique a la junta de directores su intención de así hacerlo (sección 21), o (*b*) no continuar asegurado y obtener el reembolso del 50 por ciento del total de las cuotas pagadas, siempre que notifique igualmente a la junta al renunciar su cargo, que ha hecho tal opción (sección 22). Somos de opinión que si, conforme sucede en este caso, al renunciar su puesto el empleado escoge el curso mencionado bajo la letra (*a*), la alternativa, o sea el curso (*b*), cesa para él. Si la intención del legislador hubiera sido que aún después de optar por el curso (*a*) el empleado pudiera aún disfrutar de los beneficios del curso (*b*), nada más fácil hubiera sido que haberse referido expresamente a tal situación en la misma sección 21.

Antes de renunciar o cesar en su cargo, nadie que se haya hecho voluntariamente miembro de la asociación puede retirarse de ella. Por tanto es de esperarse que al renunciar, tal empleado tenga derecho a elegir lo que debe hacer con su seguro. Sin embargo, el estatuto limita este derecho al momento de presentar la renuncia y exige que se notifique inmediatamente que se ha escogido uno u otro curso.

Existen tal vez otros argumentos a favor de esta interpretación, mas creemos que los ya expresados son suficientes para sostener la decisión de la corte inferior.

*Por tanto debe confirmarse la sentencia apelada, sin costas.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila no intervinieron.